JERRY WOLF and ABRAHAM WOLF, Partners, Doing Business as J. and A. WOLF, Appellants, v. THE HARTFORD FIRE INSURANCE COMPANY, a Corporation, Respondent.

Kansas City Court of Appeals. March 2, 1925.

1. **INSURANCE: Under Blanket Fire Policy Insurer by Settlement of Losses of Other Owners With Livestock Exchange, Held Could Not Claim That It Had Thereby Paid Plaintiffs' Loss.** In an action on a blanket fire insurance policy issued to livestock exchange for benefit of owners of livestock, losses thereunder payable to president of exchange, where insurer denied liability as to plaintiffs' cattle destroyed in fire on the ground that there was other insurance on them, and did not allege that any part of money paid to exchange in settlement of losses was for loss of cattle owned by plaintiffs, it could not thereafter claim that by such settlement plaintiffs' losses had been paid.

2. ———: **Under Blanket Fire Policy, Insured Held Not Entitled to Accounting by Companies Holding Specific Insurance, the Same Having no Relation to Policy Sued on.** Under blanket fire policy for benefit of owners of livestock *held* insurer was not entitled to an accounting by companies holding specific insurance, which policies were independent contracts, having no relation to each other or the contract sued on, and plaintiffs sued only for the excess of the loss over, and above the loss covered by specific insurance.

3. **PLEADING:** Assertion That Equitable Grounds Exist and That no Adequate Remedy or Defense at Law Can be Had, is Mere Conclusion of Pleader and Cannot Change Case at Law to One in Equity. To merely assert in a pleading that equitable grounds exist and that no adequate remedy or defense at law can be had, cannot change case from suit at law to one in equity, since such are mere conclusions of the pleader.

4. ———: **Equity: When Pleading Sufficient to Convert Action into One in Equity Stated.** If answer pleads matters of an equitable nature and asks for affirmative equitable relief, which if true would destroy plaintiffs' case, or call upon court to uproot foundation for future litigation over same matter, it converts whole case into one in equity.

5. **ACTION AT LAW: Jury: Issue Whether Plaintiffs Entitled to Recover on Blanket Fire Policy and Amount of Such Recovery Held Case at Law and Not in Equity.** Where issue was whether plaintiffs were entitled to recover on blanket fire policy and the amount of such recovery, *held* plaintiffs' action was at law and it was error to treat case as one in equity and deny plaintiffs' right to a jury.

6. **APPEAL AND ERROR:** Though Case Erroneously Tried in Equity, if Record Shows Plaintiffs Are Not Entitled to Recover as a Matter of Law, Judgment Should be Affirmed. Under section 1513, Revised Statutes 1919, though case be erroneously tried in equity instead of at law where record discloses, as a matter of law, plaintiffs are not entitled to recover, judgment should be affirmed.

7. **INSURANCE:** If Insurers under Specific Policies Were Liable for Full Amount of Loss, Plaintiffs, by Accepting Eighty Per Cent Thereof, would not be Entitled to Recover Excess Loss from Insurer under Blanket Policy. If insurers, under policies of specific insurance, were liable for full amount of their insurance, instead of eighty per cent, accepted by plaintiff, insurer under blanket policy would not be liable for excess loss, provided there would have been no excess loss if policies of specific insurance had been paid in full.

8. ———: Co-Insurance Clause Which Reduced Amount Collectible to Eighty Per Cent Held Valid at Common Law and in Kansas. Co-insurance clause in fire policy which reduced amount collectible to eighty per cent is valid at common law and in Kansas where the common law is in force.

9 ———: Insurance Policies on Livestock in Kansas, Held Kansas Contracts. Fire insurance policies on livestock in stockyards in State of Kansas, countersigned by defendant's agents in Kansas, *held* Kansas contracts.

10. ———: Broker: Person Procuring Insurance for Plaintiffs from Agents of Insurer Held to be a Broker. Where insurer's agents mailed policies of person procuring insurance for plaintiffs, and who upon receiving same delivered policies to plaintiffs, and thereafter took up policies and mailed them back to agents of insurer, *held* such person was a broker.

11. ———: ———: Whether Broker Agent of Insured or Insurer Depends upon Facts of Each Particular Case. Whether a broker is the agent of insured or of the insurer, or both, depends upon the facts of each particular case, though ordinarily he is the agent of the insured.

12. ———: One Being Agent for Other Insurance Companies Does Not Prevent Him from Being Broker in Procuring Other Insurance. The fact that one is agent for other companies effecting insurance and issuing and countersigning policies does not prevent him from acting as a broker in procuring other insurance.

13. ———: Mailing Fire Policies to Broker Who Was Agent of Insureds' Held Delivery to Insureds Making Insurer Liable Thereunder. Where policies were mailed by insurer's agents to broker, who, in procuring insurance was agent of insureds', *held* delivery of policies to insureds, was effectual to create liability of insurer thereon.

14. ———: Under Co-insurance Clause of Kansas Fire Policy, Insureds' Were Only Entitled to Recover Eighty Per Cent of Insurance. Specific insurance policies being Kansas Contracts in which eighty per cent co-insurance clause was valid, the insureds were only entitled to recover eighty per cent of insurance on destruction of their livestock by fire.

15. APPEAL AND ERROR: Where Evidence as to Insureds' Loss Requires Exercise of Judgment by Triers of Fact, Appellate Court Cannot Render Judgment for Least Amount Thereof But Must Remand Case for New Trial. Where plaintiffs' evidence as to value of

cattle destroyed in fire, though uncontradicted by defendant, was such as to call for the exercise of judgment on the part of the triers of fact, and appellate court could not say conclusively that chancellor's decision in favor of defendant was not founded in part on the evidence, appellate court will not render judgment for least amount shown to be due but must remand case for new trial.

Appeal from the Circuit Court of Jackson County.— *Hon. Allen C. Southern,* Judge.

REVERSED AND REMANDED.

*Seebree, Jost & Sebree, Frank P. Seebree, Sam B. Sebree* and *Henry L. Jost* for appellants.

*C. G. Myers* and *Amos Townsend* for respondent.

TRIMBLE, P. J.—This is an action on a contract of fire insurance, the unusual and peculiar nature of which, as well as the circumstances surrounding the controversy, will be hereinafter more fully set forth.

Owing to these matters, the trial court, on motion of defendant and over the objections of plaintiffs, regarded the case as having been converted into equity by the defenses raised, and tried it as an equity case, denying plaintiffs' right to a jury.

After hearing the case, the chancellor, by his refusal of Declaration E (the only one of plaintiff's five declarations that was refused), held that plaintiffs could not recover, and rendered judgment for defendant. Plaintiffs thereupon took an appeal to the Supreme Court on the theory that the refusal of a jury was erroneous and an invasion of plaintiffs' right thereto under the Constitution and that thereby a constitutional question arose which gave the Supreme Court jurisdiction of the ap-

peal. But that court held it was not a question of *construction*, but merely one of *application*, of the Constitution, and transferred the case to our court. [See Wolf v. Hartford Fire Ins. Co., 263 S. W. 846.]

The contract of insurance on which suit is brought, is one of two concurrently issued policies, each having the same number, No. 35821, and the same date, December 5, 1914, and with two riders attached, so that each policy effected "blanket" insurance not only to the Kansas City Livestock Exchange to whom it was issued, but also to all owners of livestock in its Stockyards, with the same force and effect as if such owners' names were written in the contract. The two concurrently issued policies are identical in terms, except that one of them (the one sued on herein), was countersigned by defendant's agent at Topeka, Kansas, and the other was countersigned by the defendant's agent at Kansas City, Missouri, and the property, though described in each by the same general and comprehensive terms, is, in the former, designated as being in Kansas, and, in the latter, as being in Missouri.

The Stockyards in question occupy one large tract of ground in Kansas City, Missouri, and Kansas City, Kansas (the two municipalities being separated merely by the imaginary boundary line between the two States), and the Stockyards being partly in Missouri and partly in Kansas. There is no question but that plaintiffs, at the time of the fire, had cattle in the pens of the Stockyards which were in charge and control of the said Livestock Exchange, and therefore plaintiffs came within the class covered and intended to be protected by the insurance.

On October 16, 1917, a fire broke out in the Stockyards and burned over an area, one-fifth of which was in Missouri and the remainder was in Kansas. Plaintiffs' cattle were in pens which were in Kansas; but according to plaintiffs' petition and evidence, only 633 head were

within the burned area and were lost through the fire, the other 751 head owned by plaintiffs were not within the burned area and hence were not lost or destroyed, but were afterwards sold by plaintiffs and they are not involved herein. A provision in the insurance contract made it cover any loss arising through the mixing of two or more owners' stock in removing them to a place of safety in the event of fire; and of the 633 head lost through the fire, 125 head were not consumed but were lost by being commingled with other cattle, and which were sold by defendant as hereinafter more particularly explained.

A clause in said contract of insurance sued on provided that if there was any *specified* insurance on livestock, then the blanket insurance should apply "only after said specific insurance is exhausted."

The petition, after pleading the situation and relationship of the different organizations at the Stockyards, the issuance of the insurance contract between defendant and the said Livestock Exchange for the benefit of itself and those who owned cattle in the Stockyards, alleged that in the fire of October 16, 1917, they lost 633 head of cattle of the reasonable value of $34,105.

Plaintiffs further pleaded that in addition to the insurance afforded by defendant in the insurance contract sued on, they had other *specific* insurance on said cattle, in various named companies, but which had been entirely exhausted in collecting therefrom the aggregate sum of $29,584.06, and that defendant was notified of that fact, whereby there remained due plaintiffs the sum of $4,519.64 ($3,398.34 according to the evidence), for which judgment was prayed together with damages and attorneys' fees for vexatious delay.

The answer admitted the execution of the insurance contract sued on, but set up that in fourteen policies issued by eight named insurance companies, the plaintiffs had $35,000 *specific* insurance; that said policies were

made, issued, and delivered in Missouri, and the companies issuing them were liable for the full amount of each policy, and if the cattle lost were of the value of $34,105, plaintiffs neglected to collect the full amount of the loss, whereby the specific insurance has not been exhausted, the defendant not being liable for anything but the excess loss above the specific insurance.

The answer further set up that in the insurance contract of December 5, 1914 (the one sued on), it was provided that settlement for loss could be made with the President of the Kansas City Livestock Exchange for the benefit of the owners of stock destroyed, and that growing out of the fire over 560 loss claims arose and the vast work of examining and passing on them in behalf of the claimants was done by said president and a committee of his choosing, and plaintiffs presented to said committee the question of whether defendant was liable to them or not on account of the specific insurance; that said committee settled with defendant for $1,733,779.99 which defendant paid to Kansas City Livestock Exchange in full settlement of all loss; that plaintiffs knew the committee were passing on the question of liability of each claimant as well as the amount of such loss, yet made no objection thereto, and did not serve upon defendant any proof of loss until after said payment to the Exchange was made, whereby plaintiffs are estopped from denying or disturbing said settlement, but are bound thereby and defendant is discharged; that in order to determine whether plaintiffs are entitled to participate in the fund so paid by defendant to said Exchange, and for a complete determination of the subject-matter of the action as well as the prevention of a multiplicity of suits, it was necessary that the Kansas City Livestock Exchange and its president be made parties and that an accounting be had of the funds so paid, and, in such accounting, it should be determined whether or not plaintiffs have participated, or if they have not

whether they should participate, in the distribution of said funds by said Kansas City Livestock Exchange.

The answer further set up that the Kansas City Livestock Exchange was never requested, and had never refused, to bring suit on plaintiffs' claims and said Exchange alone is entitled to sue, and plaintiffs have no legal capacity to do so.

The answer further set up, as a defense, a clause in the contract of insurance providing that if insured had or procured any additional insurance, whether valid or not, the insurance under the contract would be void.

The answer further set up that plaintiffs alone have the knowledge why a less sum than the loss sustained was accepted from the eight companies issuing said specific insurance; that plaintiffs did not accept said $29,-584.06 as full payment of said policies, and strict proof thereof was called for, and an accounting was asked to be had of every settlement with each company, and that said eight companies are necessary parties to this action; wherefore it was prayed that the payment of $1,733,779.99 be decreed a full satisfaction and that plaintiffs be estopped and restrained from denying or disturbing said settlement; that a full accounting be had of the disbursement of the funds and that it then be determined whether plaintiffs participated, or are entitled to participate, therein, and that defendant be discharged from further liability, and that a full accounting be had of the moneys received by plaintiffs from each of the eight insurance companies aforesaid.

The reply set up that, after the fire, and while those of plaintiffs' cattle that had survived the fire were in the yards and intermingled with cattle of other persons, defendant caused plaintiffs to deliver such intermingled cattle to defendant on the representation that it was necessary for all the surviving cattle to be gathered together without regard to ownership and sold as the property of defendant to prevent further loss and lia-

bility; that defendant took charge of said cattle and sold them and kept the proceeds and has never refunded them to plaintiffs, and defendant is therefore estopped to deny it has legal contractual relations with, and liability to, plaintiffs.

The reply denied that the Kansas City Livestock Exchange was a necessary party, and alleged there was no foundation for an accounting on the part of said Exchange, because defendant never paid any money to it for plaintiffs' account, but denied liability to plaintiffs notwithstanding it received and sold a portion of plaintiff's cattle and kept, and still has, the proceeds.

The evidence in plaintiffs' behalf tends to show that the value of 1384 head of cattle owned by them was $62,972 and the value of the surviving 751 head sold was $29,289, leaving the value of the 633 head lost at $33,683, to which if the two head of "sacred" cattle at a valuation of $150 per head, or $300 in all, be added, would make plaintiffs' loss $33,983, and deducting the $29,584.06 specific insurance received, would leave $4,398.94 due plaintiffs, if entitled to recover.

The fire was a very extensive one, destroying from 10,000 to 12,000 head of cattle; and in addition thereto a very large number that survived, belonging to numerous owners, became intermingled and mixed with other cattle and roamed about the streets; all of which were taken charge of by defendant and sold for its own account. And though the defendant did pay a large sum of money to the Kansas City Livestock Exchange in a settlement of the losses adjusted or considered by the Exchange Committee, yet defendant *did not allege* that any portion of said sum was for loss or damage to cattle owned by plaintiffs. Moreover, there is no evidence that any of said money was paid, or was intended to be paid, by defendant to said Kansas City Livestock Exchange for plaintiffs, but on the contrary the evidence is clear that not a cent of the sum so paid was for or re-

ceived by plaintiffs. Indeed, the uncontroverted evidence is that, with regard to the settlement made with the Livestock Exchange and its Committee in adjustment thereof, the defendant denied liability as to plaintiffs' cattle on the ground that there was *other insurance* on them; and defendant's own evidence shows that, on this account, the Exchange Committee did not handle, and were not allowed to handle or consider, any claim where there was *other* insurance. But without regard to what the evidence might have shown in this respect, it is not seen how an *accounting* on the part of the Livestock Exchange or of the Companies holding specific insurance, was necessary or could be demanded by defendant, because the latter would have no interest in whether plaintiffs obtained *all* they were entitled to from their participation in the funds. The *defense* of defendant would have been *complete* when it appeared that the adjustment by the Exchange Committee included plaintiffs' loss, and that defendant had paid the sum under the settlement with the Livestock Exchange. Neither was an accounting, on the part of the companies holding specific insurance, necessary, nor could it be demanded by defendant, since the pleadings show on their face that they were merely independent contracts, having no relation to each other or to the insurance contract sued on, and plaintiffs are not suing for the *same* loss which the specific insurance companies paid but only for the *excess* of the loss *over and above* the loss covered by them. [Mechanics Ins. Co. v. Hoover Distilling Co., 173 Fed. 888.] It is manifest, therefore, that neither the pleadings nor the evidence disclose any ground whatever for an accounting on the part of those above named.

There are no *facts* alleged in the answer calling for the interposition of a court of equity on the above or on any other grounds, nor does the evidence disclose any for that matter. To merely *assert* in a pleading that equitable grounds exist and that no adequate remedy

or defense at law can be had, cannot change the case from a suit at law to one in equity, since such are mere conclusions of the pleader. No necessity or even opportunity appears for any *affirmative* action of the court, which would require, and which could only be done by, a court of equity. The pleadings show on their face that the insurance contract between defendant and the Livestock Exchange, and on which plaintiffs base their suit, has been surrendered by said Livestock Exchange and cancelled (of course, such cancellation would not affect plaintiffs' rights already or theretofore existing, but it would prevent the possibility of any claim thereafter arising from a future loss), and hence nothing was needed to be done by the court trying this case except to determine whether defendant should be required to pay. And this was an issue to be tried at law. We readily concede that if an answer "pleads matters of an *equitable* nature and asks for *affirmative equitable* relief" (italics ours) which if true would destroy plaintiffs' case or show they never had a valid cause of action, or would call upon the court to uproot the foundation for any future litigation over the same matter, the whole case would be converted into equity. [Colbern v. Krenning, 220 S. W. 934, 937.] But where in this case is any *affirmative* equitable relief necessary? Or where are there any equitable matters necessary to establish the defense? In Citizens' Trust Co. v. Going, 288 Mo. 505, 511, it is said: "The action was at law. The defenses thereto may to a certain extent, be equitable in *form,* but the interpretation of an equitable defense in the absence of a prayer for *affirmative* relief based thereon, does not convert the action into one in equity." (Italics ours.) The case at bar is not in as good shape to be considered one in equity as the case cited, for the defenses raised are not of an equitable nature or form, and no necessity whatever exists for affirmative relief. See, also, in addition to the above cited case, the following cases: Berryman v.

Maryland, etc., Ins. Co., 199 Mo. App. 503, 505; State ex rel. v. Reynolds, 289 Mo. 382, 400-405; Minor v. Burton, 228 Mo. 558, 563. Manifestly, therefore, the issue presented by the pleadings is simply whether plaintiffs are entitled to recover on the contract sued on, and if so, the amount of such recovery. The plaintiffs' remedy was at law and the defense was also at law—and both were adequate. Hence it was error to treat the case as one in equity and deny plaintiffs' right to a jury. [McKee v. Allen, 204 Mo. 655, 674.]

But even though the case was thus erroneously tried, yet if the record discloses, as a matter of law, that plaintiffs are not entitled to recover, the judgment should be affirmed. [Sec. 1513, R. S. 1919; Baird v. Granniss, 208 Mo. 426, 441, 442.]

However, any contention that the plaintiffs had no right to any insurance under its blanket policy because of the provision in the latter against other insurance, overlooks the effect of another provision that if other insurance were taken, defendant would be liable only for the excess of loss above the specific insurance. [Dolan v. Missouri, etc., Ins. Co., 88 Mo. App. 666, 673; Sheetz v. Iowa, etc., Ins. Co., 153 Mo. App. 620, 633; Bush v. Missouri, etc., Ins. Co., 85 Mo. App. 155, 159.] It would seem, too, that in view of defendant's refusal to recognize any liability to plaintiffs under said blanket policy, coupled with its appropriation, nevertheless, of the cattle of plaintiffs which were commingled with other cattle, would estop it from denying that its policy was in force as to plaintiffs. [Tinsley v. Aetna Ins. Co., 199 Mo. App. 693, 704.]

The fire and the insurance contract (with the possible exception of a minor term contained in one of the riders which enlarges rather than restricts the policy), are the same as were involved in the case of Wilson Co. v. Hartford Fire Ins. Co., 300 Mo. 1, wherein the Supreme Court settled the question of plaintiff's right to

sue, and also decided that the defense of payment to the
Kansas City Livestock Exchange did not discharge de-
fendant from its obligation, and was no defense thereto.
Of the fourteen policies of specific insurance held by
plaintiffs in the case at bar, six of them paid only
eighty per cent of the amount insured by them; and it is
defendant's contention that the six were liable for the
full amount of their insurance, which, if plaintiffs had
collected instead of accepting only eighty per cent there-
of, would leave no excess of loss for defendant to pay.
If this be true, of course plaintiffs are not entitled to
recover.

The question of whether the full amount or only
eighty per cent of the insurance was collectible from the
six policies above referred to, depends upon the valid-
ity of a co-insurance clause therein which reduced the
amount collectible to eighty per cent. The other eight
policies were Missouri contracts, and had the same clause
in them, but the full amount of insurance was collected
on them as, under Missouri law, such co-insurance clause
was void. [Section 6232, Revised Statutes 1919; State
ex rel. v. Clark, 275 Mo. 95; Cravens v. New York, etc.,
Ins. Co., 148 Mo. 583; Equitable, etc., Assurance Society
v. Clements, 140 U. S. 226.] The question then is wheth-
er the clause in the six policies above mentioned is valid.
That depends upon whether they are to be regarded as
Kansas contracts or Missouri contracts. Such clauses
in Kansas insurance contracts are valid for the common
law was proved to be in force there (Section 11829, Genl.
Stats. of Kans. 1915; State v. Calhoun, 50 Kan. 523, 531),
and, in the absence of a statute making such clauses in-
valid, they are effective because valid under the common
law. [14 R. C. L., sec. 482, p. 1309; Stephenson v. Agri-
cultural, etc., Ins. Cos., 116 Wis. 277; Farmers' Feed
Co. v. Scottish Union, etc., Ins. Co., 173 N. Y. 241; Sur-
face v. Northwestern, etc., Ins. Co., 157 Mo. App. 570,
577; 26 C. J. 357.] Of course, if the six insurance pol-

icies are Kansas contracts, they are governed by the laws of Kansas. [Thompson v. Traders Ins. Co., 169 Mo. 12, 26; Prentiss v. Illinois Life Ins. Co., 225 S. W. 695, 703.] The pivotal question on this point then is, were the six specific insurance policies on which only eighty per cent was collected, Kansas contracts? They were countersigned by defendant's agents in Kansas; they covered, and were restricted to, property in Kansas; the property was not only located in Kansas but was destroyed and lost there. It appears that one Wallace had, for ten years prior thereto, procured insurance for plaintiffs and he applied to the Kansas agents for, and obtained, said policies. After the Kansas agents had countersigned and issued the policies, they sent them by mail to Wallace who turned them over to the plaintiffs and remitted to the Kansas agents the amount due them. When payment of loss was made, it was sent by the Kansas agents through the mail to Wallace who turned the same over to plaintiffs, took up the policies and mailed them back to the Kansas agents. Wallace was, therefore, a *broker*. [Edwards v. Home Ins. Co., 100 Mo. App. 695; Smith v. American, etc., Ins. Co., 188 Mo. App. 297, 305; Elliott on Insurance, sec. 157.] Whether a broker is the agent of insured or of the insurer, or both, depends upon the facts of each particular case. (Buck v. Stuyvesant Ins. Co., 209 Mo. 302); but ordinarily he is the agent of the insured and was so in this case as to the six policies obtained from the Kansas agents. The fact that he was himself also an insurance agent for other companies and effected insurance for them in Missouri, issuing and countersigning such policies, did not prevent him from acting also as a broker in procuring other insurance as such. And whether he was a broker in procuring the six specific insurance policies in question is to be determined from the *facts* as to *what he and the Kansas agents* issuing the policies *did,* and not from loose expressions used by witnesses in testifying and

in which such witnesses were not even intending to state their *conclusions* as to whether Wallace was the agent of one or the other—the insurer or insured. We think the facts clearly show that he was *not* the agent of the Kansas companies. So that when the policies were, in Kansas, deposited by the Kansas agents in the mails addressed to Wallace, this was a delivery to plaintiffs which was effectual to create liability of the companies. Hence all the conditions and elements necessary to make the policies Kansas contracts existed. [Thompson v. Traders Ins. Co., 169 Mo. 12, 26; Elliott on Insurance, supra; Ayers v. Continental Ins. Co., 217 S. W. 550; 14 R. C. L., p. 894, sec. 70; Horton v. New York Life Ins. Co., 151 Mo. 604, 620; Edwards v. Business Men's etc., Assn., 205 Mo. App. 102, 109.] The six specific insurance policies being Kansas contracts in which the eighty per cent co-insurance law was valid, it follows that plaintiffs collected all that was possible to obtain on them. [American Bonding Co. v. Alcatraz Const. Co., 202 Fed. 483, 485; Illinois Surety Co. v. Maguire, 145 N. W. 768, 769; Cutting v. Atlas, etc., Ins. Co., 85 N. E. 174, 175.] In other words, the contention that plaintiffs are not entitled to recover because they accepted only eighty per cent of the insurance called for in these six specific policies, is untenable and cannot be upheld.

Plaintiffs, along with their motion for a new trial, filed a motion for judgment *non obstante veredicto,* which was overruled, and they now urge that since defendant offered no evidence countervailing the evidence as to *value* of the cattle lost, and since, in order to avoid further litigation, plaintiffs are now willing to accept the least amount their evidence shows to be due, we should treat the case on the same theory that defendant succeeded in having it tried, and render judgment for said least amount. We do not think this should be done. In the first place, the evidence as to value of the cattle lost is such as to call for the exercise of judgment on the

part of the triers of fact who can see the witnesses and hear them testify. In the next place, we cannot say that, conclusively, the chancellor's decision in favor of defendant was not founded, in part at least, on his view of the evidence, though it would seem that it was not. If not, there has been no determination, in the trial court, of the question or amount of value lost. So the case should be remanded for a new trial. Accordingly, the judgment is reversed and the cause remanded. All concur.