## CHARLES F. GRAHAM, (Appellant, v. SAMUEL E. GRAHAM et al.

### Division Two, February 23, 1923.

1. **PRACTICE: Declarations of Law: Case Tried by Court.** Failure to give declarations of law is of no importance on appeal where the theory upon which the court decided the case is shown by its rulings and judgment.

2. **EVIDENCE: Unprobated Will.** A will does not go into effect until probated, and is not probated until the court having probate jurisdiction so declares by its judgment, and in the trial of an action to determine title to real estate the admission in evidence of a will which has never been probated is error.

3. ————: **Unprobated Will of Wife: Estate Devised.** Where the title to the land in suit was in her husband at the time he and his wife made a joint will devising the land to their son, to take effect after the death of both, she had no interest in the land other than her statutory right, and her will, made after the husband's death, but never admitted to probate, by which she attempted to revoke the former so-called joint will, is not admissible in evidence.

4. **JOINT WILL: By Husband and Wife: Husband's Lands.** A will made by the owner of land and his wife, by which they devised to their son the husband's lands "for caring for us while we live" and "to take effect after we are both dead and not before," and executed by both in 1902 and probated in 1920, although the husband died within two weeks after it was made, was the separate will of the husband, its provisions were not contrary to public policy or impossible of being carried into effect, and it was entitled to probate upon his death. Although it was executed by both and purported to be the will of both, it was neither a joint nor a mutual will, because it disposes of the property of the husband alone, and must be treated as his will alone, the signature of the wife being rejected as mere surplusage.

5. ————: ————: ————: **To Take Effect Upon Death of Both: Public Policy: Administration.** The fact that the will made by the owner of land and his wife provided that it was to take effect after the

death of both and not before did not hinder his creditors, if he left debts unpaid, from having an administration upon his estate, and having their debts paid out of his property, nor was the will invalid because letters of administration were not taken out within thirty days after his death, nor because the will was not probated within ten years thereafter, although it was entitled to be probated at his death, notwithstanding the wife survived him. The provisions of such a will are not legally impossible of being carried out, nor are they contrary to public policy, since the statute (Sec. 2271, R. S. 1919) provides that an estate of freehold may be made to commence in the future by deed or will.

6. ———: **Devise Upon Condition: Revocation.** A devise by the owner of land and his wife to a son "for caring for us while we live" imposed an obligation upon the son to support his parents, but the performance of that obligation was not made a condition, precedent or subsequent, and the validity of the devise is not dependent upon its performance; but the husband having died, his wife had no power to revoke the will for the son's failure to perform the obligation.

Appeal from Miller Circuit Court.—*Hon. John G. Slate, Judge.*

REVERSED AND REMANDED (*with directions*).

*W. S. Stillwell* and *Ira H. Lohman* for appellant.

(1) The so-called joint will was in legal effect a joint and several will, and so far as it affected the property involved in this suit was a valid will. Bower v. Daniel, 198 Mo. 320; Bright v. Cox, 147 Ga. 476; Schumaker v. Schmidt, 44 Ala. 467; In re Davis Estate, 120 N. C. 9; Evans v. Smith, 28 Ga. 98; Ex parte Day, 1 Bradf. Surr. 476; In re Crawley Estate, 136 Pa. St. 628; In re Crawley Estate, 162 Pa. St. 520; Campbell v. Dunkelberg, 172 Iowa, 385; Lewis v. Schofield, 26 Conn. 452; Frazier v. Patterson, 243 Ill. 80; Gerberich v. Freitag, 213 Ill. 552; March v. Huyter, 50 Tex. 243; Carle v. Miles, 89 Kan. 540; In Matter of Diez, 50 N. Y. 88; 1 Schouler on Wills (5 Ed.) pars. 456, 458, p. 576; 1 Alexander's Comm. on Wills (1917 Ed.) pp. 83, 90, 91. (2) The court erred in declaring that the unprobated

will of Jean Graham revoked the joint will. The will of Jean Graham was never probated, and a will cannot take effect until probated, and where the title to land is involved an unprobated will cannot affect the title, and there is no probate of a will unless there has been a judicial pronouncement by the probate court establishing a will as legally proved. Farris v. Burchard, 242 Mo. 1; Snuffer v. Howerton, 124 Mo. 637; Smith v. Estes, 72 Mo. 310; Stowe v. Stowe, 140 Mo. 594; Cohen v. Herbert, 205 Mo. 537. (3) The court erred in excluding the testimony offered by appellant to prove that he properly cared for and supported his father, Alex Graham, Sr., during his lifetime, and that he properly cared for and supported his mother, Jean Graham. That is an issue raised by the pleading and under the terms of the will makes a contract such as would preclude Jean Graham in equity from revoking her part of the joint will. Bower v. Daniel, 198 Mo. 289, 321; In re McGinleys Estate, 257 Pa. St. 478; Schouler on Wills, par. 453. (4) In this case the survivor, Jean Graham, received the benefits of the joint will by reason of the support for a period of seventeen years, and the rule of law is settled that where the survivor has received the benefits or advantages of a joint will of the other, it would be inequitable to change the will, the other having become irrevokable by reason of death. In such cases equity will impose the trust. In this case the section under which the action was brought tries all title, legal and equitable. Jean Graham could not have revoked the joint will of Alex. Graham, Sr., in so far as it affected his property. 1 Alexander's Comm. on Wills, par. 81, pp. 93, 94; 40 Cyc. par. 3, p. 2117. The trust on the property, of course results in favor of the beneficiaries of the will revoked in violation of the agreement. Bower v. Daniel, 198 Mo. 298. (5) The most strict construction which could have been given to the will at bar is that it created an estate in fee simple on a condition subsequent. Alexander, v. Alexander, 156 Mo. 419; 40 Cyc. 1711; Wood v. Ogden, 121 Mo. App. 668. Mere non-performance of

the condition will not divest. the estate.    Performance of the condition may be waived and the estate continue in the grantee after the breach of the condition until the person who has the right to insist upon a performance elects to declare a forfeiture.    Ellis v. Kyger, 90 Mo. 600; O'Brien v. Wagner, 95 Mo. 93.    (6)    If the estate is subsequent in character, then the estate vests immediately.    The law favors the vesting of estate, and where there is a reasonable doubt. as to the time an estate is to vest, the doubt should be resolved in favor of the earliest possible date when it can vest.    Jones v. Jones, 223 Mo. 443; Deacon v. St. Louis Union Tr. Co., 197 S. W. 261; Tindell v. Tindell, 167 Mo. 225.    The statements made in the will of Jean Graham as to appellant failing to support her, are incompetent, the statements therein being self-serving, and in violation of the rule against hearsay.    Hitt v. Hitt, 150 Mo. App. 635.

*Barney Reed* and *Embry & Embry* for respondents.

(1)    Under the provisions of the statutes, land cannot be sold for debts against testator's estate after ten years from date of death of testator.    A will which provides, as this one did, that the will should not take effect until the date of the death of the survivor, shows absurdities and impossibilities in the event the survivor lived more than ten years, and the life-time of the survivor after the death of first joint maker being uncertain makes demand that the terms of the will be disregarded and held to be legally of no account.    Sec. 179, R. S. 1919.    (2)    Our statutes contemplate that letters of administration or testamentary be taken out within thirty days from date of death of a decedent. Sec. 8, R. S. 1919.    (3)    The will of Alex and Jean Graham attempted to give Charles F. Graham an estate in remainder, without creating a prior or particular estate on which the remainder may rest, and for this reason the estate in remainder to Charles F. Graham must fail. 2 Washburn, Real Property (5 Ed.) p. 586; Tiedeman,

Real Property, sec. 396; Payne v. Payne 119 Mo. 174. (4) The court of last resort in the State of Connecticut, in dealing with question of joint will, and which recites that it shall not take effect, until the death of the survivor, says that such a will presents a scheme of disposition which is legally impossible. The facts in above case and the one at bar are the same. The court did right in distributing the estate according to law of descent and distribution, as to all those who answered. State Bank v. Bliss, 67 Conn. 317; 1 Schouler, Wills and Admin., p. 227. (5) The identical question involved in this case was before the Supreme Court of Arkansas, and the court declared: "There can be no such thing as a joint will to take effect on the death of the survivor. A will must take effect at the death of the testator and not at a time still in the future." The will was declared to be invalid. Hershy v. Clark, 35 Ark. 17. (6) The Supreme Court of Ohio, 14 Ohio 157, holds joint wills are not valid, and while the above case has in some respects been reviewed by the same court adversely, yet the case first cited has been followed by the Supreme Court of Iowa, and has been approved, and under the decision of the Iowa court in Murphy Case, 14 Iowa, 177, a joint will is void. (7) Objection to the competency of the will of Jean Graham, on account of certificate of probate, comes too late in appellate court. No such objections were made in trial court. Sawyer v. French, 235 S. W. 129. (8) The court did not base its judgment in this case, on the fact that Jean Graham executed a revoking will. The suit was filed for purpose of clearing title, and not to establish or contest a will, either of Alex Graham and Jean Graham jointly, or Jean Graham alone. The answer of appellants shows they defend and claim as heirs at law of Alex Graham not alone by reason of any revoking will but because of the invalidity of the will of Alex Graham. A defendant can set forth as many defenses as he has to any course of action. The judgment speaks for itself, and it shows the court found respondents had certain interests in the land.

HIGBEE, C.—This is an action to determine title to a farm of 220 acres in Miller County.

The petition states that plaintiff is the owner and in lawful possession of said farm; that he acquired it through the last will of Alexander Graham, Sr., deceased, and that the defendants claim some title or interest therein adverse to plaintiff and prays determination of the title.

Two of the defendants, Gertrude Ray and Ruby Ray, minor grandchildren of Alexander Graham, Sr., answered by their guardian *ad litem*. The answer of Samuel D. Graham, Jane E. Bell and Andrew M. Graham, averred that Alexander Graham, Sr., died intestate in the year 1902, and, after a general denial, asserted an interest in the land as heirs of the said deceased, and also by being devisees named in the last will of their mother, Jean Graham, deceased. The answer proceeds: "Said defendants further state that Alex Graham, Sr., deceased, and Jean Graham during their lifetime executed a certain written instrument now of record in the Probate Court of Miller County, Missouri, which written instrument purported to give to Charles F. Graham, plaintiff herein, the land described in the petition, in consideration that he, the said Charles F. Graham, would support the said Alex Graham and Gene (Jean) Graham, and the survivor of them during their lifetime; and after the death of the said Alex Graham, Sr., aforesaid, Gene (Jean) Graham, his widow, survived him a long number of years, and the plaintiff, Charles F. Graham, wholly failed, refused and neglected to support her, the said Gene (Jean) Graham, during her lifetime, and by such neglect, failure and refusal the said Charles F. Graham forfeited all of the right, title and interest which he might otherwise have claimed by reason of the said joint instrument above referred to purporting to give him an interest in the lands described in plaintiff's petition." The answer further avers that because of the failure of plaintiff to provide for her, Jean Graham, by her last will, revoked the

joint written instrument so executed by her and her husband. The answer concludes with a prayer that they be decreed an undivided three-sevenths interest in the land.

James Graham filed no answer. Margaret E. Harbison, Elmer Graham, Edgar Graham, Opal Roberts and William Graham, defendants, filed disclaimers.

The reply admitted that Alexander Graham, Sr., died in the year 1902, averred that his will was thereafter duly probated and specifically denied all other averments of the answer.

The court found that the plaintiff, by reason of the default of James Graham and by reason of the disclaimers filed by the other named defendants and by reason of the interest he owns in said land as a child of Alexander Graham, Sr., and of Jean Graham, both deceased, is entitled to nineteen thirty-fifths of said land; that Samuel D. Graham, Andrew M. Graham and Jane E. Bell, are each entitled to an undivided one-seventh interest in said land, and that Gertrude Ray and Ruby Ray are jointly entitled to an undivided one thirty-fifth interest therein, and that no other parties to this action have any interest therein, and judgment was rendered defining and adjudging the respective interests of the parties accordingly.

It was admitted that the title to the land described in the petition was in Alexander Graham, Sr., at the time of the execution of the will. The will was read in evidence. The material parts are as follows:

"Know all men by these presents. That we, Alex Graham (sen) and Jeane Graham, of the County of Miller, State of Missouri being of sound mind and memory, do make and publish this our last Will and Testament, in manner and form following:"

The first paragraph gives and bequeaths to James Graham, Alex Graham (Jr.), Margaret E. Graham, Jane E. Bell and Andrew M. Graham, five dollars each, and to Charles F. Graham, "all the balance of our personal property and money."

"Second.   We give and Devise For Caring for us while we live To Charles F. Graham all our land as follows:   [description omitted.]   To have and to hold the same and the several tracts and parcels thereof to the said Charles F. Graham and his heirs and assigns forever. .

"The provisions of this our Will are to take effect after we are both dead and not before.

"And last we hereby constitute and appoint Alex Graham (Jr.) to be the executor of this our last will and testament."

The will was signed by the testators and attested by three witnesses on March 15, 1902, and was admitted to probate in proper form on January 17, 1920.  Alexander Graham died within two weeks after the execution of the will.

Plaintiff took the laboring oar, and introduced Mr. Russell, who testified he had known the Grahams forty or fifty years; had lived on the farm adjoining that in question thirty-three years; was present when the will of Alexander Graham, Sr., was written by his son Alexander who was a justice of the peace.

"Q.   What kind of care did Frank [Charles F.] Graham take of these parents, if you know?   A.   Well, he cared for them as good as they could be cared—as good as he could care for them, I guess; seemed that way to me.   I don't suppose there was ever any kick on the way he cared for them, before the old man died, and after the old man died the old lady the same way.   As good as could be done.   As good as any poor man could.

"Q.   What do you know about the care?   Did you frequently visit the home?

"THE COURT:   There is no particular use in that because he said he took care of them as good as he could and as good as a poor man could.   Now, I won't let you go into details; it takes too long.

"MR. STILLWELL:   Well, now, did that continue up until the death of the old lady?   A.   Yes, sir; it continued up until the death of the old lady, except a short

time she went visiting. . . . He cared for her until after she left there. . . .

"The COURT: The question is whether this is a good will or not. That ought to be determined here first. If it is a good will, then you would be put to your proof as to whether you earned under it. . . .

"MR. REED: I think that is the crucial point in it.

"THE COURT: Why, there is no question about it. If the will is no will at all, if he died intestate—if the old man died intestate, why, then the children would all take under the laws of descent and distribution. I understand the old lady made her will according to the law of descent and distribution, didn't she?

"MR. EMBRY: Yes, sir.

"THE COURT: Now, then, if this joint will was a good will—they say not, you say you believe it is.

"MR. STILLWELL: But they say also that we didn't carry out our agreement.

"THE COURT: If there was no will, why, then the agreement didn't amount to anything.

"MR. REED: I suggest this, in open court we take up the legal question involved, right after dinner, as to whether this is a good will or not, and if the court holds that it is a good will, why, then we will proceed with the question of whether it has been—the contract has been carried out; if not, there is no use going on with it."

Plaintiff offered to prove by five witnesses, naming them, that he faithfully cared for and attended to his father and mother until the times of their deaths.

"MR. EMBRY: We object to that offer of testimony because the so-called joint will of Alexander Graham, senior, and Jean Graham shows on its face that its terms present a legal impossibility, and the position of the defendant is that the will, in its form, is not the will of Alexander Graham, and that his property is intestate property under the so-called will; and for the further reason that the records of the Probate Court of Miller County show that Jean Graham, by her duly pro-

bated will, revoked the so-called joint will, and therefore the offer is incompetent, irrelevant and immaterial, and throws no light on the terms of the will.

"THE COURT: Now, the objection will be sustained." Exceptions were saved to the rulings of the court.

Defendants offered in evidence an instrument purporting to be the last will of Jean Graham, dated April 14, 1919, reciting that it revokes and cancels a certain will made by "me jointly with my beloved late husband, Alex Graham (sen) which will is dated March 15, 1902, for the reason that my son Charles F. Graham has wholly failed, neglected and refused to care for and support me and I have been compelled to support and provide for myself, and the said Charles F. Graham became so immoral by his lascivious conduct with one Ethel Kitchel, whom he has married and is now living with, that my said son is not entitled to the property devised to him under and by the terms of said will." The instrument proceeds: "I give devise and bequeath all of my real, personal and mixed property to my children to share and share alike, to-wit: To James Graham, to Samuel D. Graham and Margaret E. Harbison, and Jane E. Bell, and Andrew M. Graham, and Charles F. Graham and to the children and grandchildren of Alex Graham, Jr., my beloved son, who is now deceased, I bequeath a share equal to one child's share." It purports to be signed by Jean Graham by her mark and attested by three witnesses. The abstract recites: "(Certificate of Probate does not appear of record and blank space is left therefor if same can be found.) (No certificate of probate found.)"

Plaintiff objected to the reading of the will for the reason that it could in no wise affect the will of Alexander Graham, and is immaterial and irrelevant to any issue in the case. The objection was overruled and the will was read in evidence. There were no declarations of law asked or given.

I. The failure to give declarations of law is of no importance. If given, they would simply indicate the

Graham v. Graham.

Declarations
of Law.

theory of the court. This is shown by its rulings and judgment. [Armor v. Lewis, 252 Mo. 568, 574.]

II. The court erred in admitting the alleged will of Jean Graham. It could not take effect until probated and it is not probated until the court having probate jurisdiction so declares by its judgment. [Farris v. Burchard, 262 Mo. 334.] Mrs. Graham had no interest in the land other than her statutory rights, as it was admitted that the title was in her husband at the time of the execution of the so-called joint will.

Unprobated
Will.

III. We think it clear the learned trial court concurred in the view of respondents' counsel that the will of Alexander Graham was inoperative. Whether plaintiff supported his parents was, in the mind of the court, unimportant until it was determined whether or not it was a good will. The court concluded it was not and sustained the objection to the offer of further proof.

Conclusion
of Court.

IV. Respondents contend that under our statutes, letters of administration must be taken out within thirty days after the death of the decedent; lands cannot be sold for debts of decedent after ten years from the date of his death; the will providing that it should not take effect until after the death of the surviving testator shows absurdities and impossibilities in the event the survivor lived more than ten years, and the lifetime of the survivor after the death of the first joint maker being uncertain, makes demand that the terms of the will be disregarded; that the will has provisions that are legally impossible; it is against public policy and the rights of creditors; it suspends the vesting of the title until the death of the survivor of the joint makers; it attempts to create an estate in remainder in Charles F. Graham without creating a particular estate on which the estate in remainder may rest.

Public Policy:
Impossible Terms.

V.  If the testator, Graham, left unpaid debts at his death, his creditors were not hindered by the will in having an administration on his estate.  A will does not affect the right of a creditor of a deceased house-holder, dying testate, to have his debt paid out of the testator's property.  [Armor v. Lewis, supra, 1. c. 576.]

VI.  This case is wholly unlike State Bank v. Bliss, 67 Conn. 317.  On page 323, the court said:

"The will is partly a joint and partly a mutual one. Each testatrix executed it as the will of both and in order to accomplish a common purpose.  Its form would indicate that it was originally drafted as a joint will, only, and that the recip- rocal provisions and contingent resid- uary gift to their next of kin, found in the clauses num- bered from 5 to 8, were subsequently inserted.  A will strictly mutual is in legal effect nothing but the individ- ual will of that one of the testators who may die first. [Lewis v. Schofield, 26 Conn. 452.]  To give such a con- struction to the will now under consideration would do violence to its terms.  It purports to be a joint act; it creates a common fund out of which the debts of each and her funeral expenses are to be met, and legacies to third parties paid; and it provides against its probate until both the makers are dead, after making each the residuary legatee of the other.  This scheme is one which it is impossible to carry out, and its various parts are so related to each other that all must fall together."

*Joint Will: Husband's Lands.*

VII.  There was no direction in Graham's will to postpone probate of the will, nor were there mutual or reciprocal devises.  The farm belonged to Alexander Graham.  It was, as we will see, his separate will.  The clause reciting "that the provisions of this will are to take effect after we are both dead and not before" is not contrary to public policy, but is sanctioned by Sec- tion 2271, Revised Statutes 1919, which reads, in part: "And hereafter an estate of freehold or inheritance may

be made to commence in future by deed, in like manner as by wills.''

In Buxton v. Kroeger, 219 Mo. 225, 256, Fox, J., said: "It is a sufficient answer to that inquiry to say that under the provisions of Section 4596, Revised Statutes 1899 [now Sec. 2271, R. S. 1919], it was not necessary that there should be any estate created between the end of the life estate and the vesting of the estate in remainder. It was expressly ruled by this court in O'Day v. Meadows, 194 Mo. 588, that an estate may be created by deed to commence in the future without any intervening estate to support the same.''

VIII.  It was held in Bower v. Daniel, 198 Mo. 289, 320, that ''a joint will or, in other words, a single instrument containing the wills of two or more persons, may be probated upon the death of one of the testators as his will, and, unless revoked subsequently, may again be probated upon the death of another of the testators as the will of the latter. . . . A mutual will is unquestionably valid and is entitled to probate upon the death of the other party.''

*Probate of Joint Will.*

In Alexander's Comm. on Wills, sec. 77, page 90, we read: "It is now well settled both in England and in the United States that joint, mutual or reciprocal wills, whether executed in one document or more, are valid as the separate wills of the testators.  The separate will of each testator affects only his property or his interest in joint property, and becomes operative only at his death.''

Section 78, page 91, reads: "A testamentary document jointly executed by two persons may declare in terms that it is the joint will of both and that the property disposed of shall pass to the devisees named after the death of the survivor, yet such an instrument may be admitted to probate in certain cases.  The use of the word 'joint' does not alter or affect the provisions of the will and the contents must control; thus, where the surviving husband or wife would have been entitled to

all the property of the other disposed of by a testamentary document jointly executed by both, in the event such other had died intestate, and the instrument contains nothing which would prevent revocation, there would be no impropriety in postponing the right of the beneficiaries to receive such property until after the death of both testators."

"A testamentary instrument, although it is signed or executed by two persons, and although it may purport to be the will of both, is neither a joint nor a mutual will where it disposes of the property of only one of them, but it must be treated as the will of that one only, and signature of the other being rejected as mere surplusage." [40 Cyc. 2111.]

Hence it results that the will in question was the separate will of Alexander Graham; that its provisions were not contrary to public policy or impossible of being carried into effect, and it was entitled to probate at his death.

IX. There is no merit in respondents' contention that by the terms of the will the land was devised to plaintiff on condition that he would support the testators during their lives and that Mrs. Graham had declared a forfeiture because of his failure to perform that condition.

**Devise for Consideration.**

It may be conceded that the will imposed an obligation upon plaintiff to support his parents, but the performance of that duty was not made a condition, precedent or subsequent. Such a condition must clearly appear; it will not be implied. [40 Cyc. 1683.]

In Roberts v. Crume, 173 Mo. 572, the devise was upon condition that the devisee would care and provide for testator's son during his life. Syllabus 3 reads: "The condition in said will to support the son was not a subsequent one, for such a condition, to defeat or work a forfeiture of vested estates, must be created in express terms or by clear implication, and nothing is to be found in these words to indicate any such intention."

See also Catron v. Scarritt Collegiate Institution, 264 Mo. 713, 723; German Evangelical Prot. Congregation v. Schreiber, 277 Mo. 113, 127.

The judgment is reversed and the cause is remanded with directions to enter judgment for the plaintiff, declaring him to be the owner in fee of the premises described in the petition and that the defendants, nor either of them, have any interest therein. *Railey* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court. All of the judges concur.