Missouri District Telegraph Company, a Corporation, v. Southwestern Bell Telephone Company, a Corporation, Union Electric Light & Power Company, a Corporation, Appellants. —93 S. W. (2d) 19.

Court en Banc, March 18, 1936.

694

*David H. Robertson* for Union Electric Light & Power Company.

696

*Smith B. Atwood, William F. Coyle, James A. Waechter* and *Frank P. Aschemeyer* for Southwestern Bell Telephone Company; *Earl H. Painter* of counsel.

*Francis R. Stark* and *Jones, Hocker, Gladney & Jones* for respondent.

HAYS, J.—Lester D. Rose recovered a judgment against the parties to the present suit for damages for personal injuries he sustained on April 15, 1926, by falling from a telephone pole on which were located plant facilities of the respective companies. The judgment was affirmed for $40,000 on appeal to this court. [Rose v. Missouri District Telegraph Company, 328 Mo. 1009, 43 S. W. (2d) 569.] Thereafter, on January 8, 1932, the telegraph company, respondent herein, paid said judgment under execution, and shortly sued the telephone company and the light company, its codefendants in the former action, for indemnity for $50,938.85 paid in discharge of said judgment together with accrued interest and costs. The telegraph company suffered a nonsuit in its action for indemnity, and the judgment of nonsuit was on appeal to this court affirmed. [Missouri District Telegraph Co. v. Southwestern Bell Telephone Co. & Union Electric Light & Power Co., 336 Mo. 453, 79 S. W. (2d) 257.]

We may profitably resort to and quote from the opinion in the indemnity case, supra, for its concise outline of the ultimate facts and the pleadings in the Rose case. However, the particular demands of the case at bar may make it necessary to amplify the outline here and there in the course of this opinion:

"The telephone company leased to the telegraph company space for wires on a pole owned by the telephone company. It was alleged in the Rose case that a cross-arm occupied space on the pole under a lease from the telephone company, and that the light company owned the cross-arm. The light company denied ownership of the cross-arm. The jury determined the question against the light

company. It was further alleged therein that a mutual arrangement existed between companies whereby their employees were authorized to climb the pole in the performance of duties to their respective companies. Rose was an employee of the telegraph company. As such he climbed the pole. Attached to the pole was the cross-arm in question. When Rose placed his weight on the cross-arm, it became detached from the pole, thereby causing him to fall and sustain injuries.

"In substance, it was charged in said case that the telegraph company negligently failed to furnish Rose a reasonably safe place to work, in that it failed to exercise ordinary care to inspect said cross-arm, and that as a direct result of said negligence he was injured. It also was charged that the telephone company and light company were negligent in that they knew, or by the exercise of ordinary care could have known, of the defective condition of the cross-arm, that they negligently permitted it to remain on the pole in said condition for a long time prior to Rose's injuries, and that as a direct result of said negligence he was injured.

"The answer of the telephone company was a general denial. The answer of the light company was a general denial, with a plea of contributory negligence. The answer of the telegraph company was a general denial with pleas of contributory negligence and assumption of risk. The reply was a general denial."

The petition in this case alleged Rose's injury and the facts connected therewith, the institution of the Rose suit, the resulting judgment and this plaintiff's payment thereof, and set up and incorporated in haec verba the pleadings which were filed in that case. The petition contains also certain allegations supposedly invoking equitable jurisdiction herein. This additional matter will be stated in an appropriate and later connection. The separate answers herein of the defendants contained admissions of the petition's allegations concerning Rose's casualty and injury and the institution of his suit, the rendition of judgment and plaintiff's payment thereof, and coupled such admissions with general denials of liability herein. The answers set up additional defenses not in common. These defenses will be stated lated in connection with the appellate issues based thereon. The telegraph company recovered judgment or decree for contribution against each defendant for one-third of the amount of the Rose judgment and interest and costs as paid by respondent, with interest from date of payment. The light company and the telephone company took separate appeals, filed a joint abstract of record, argued the appeals together, but filed separate briefs. In such situation there is but one case before us and but one opinion needs be written.

I. The first question for consideration is whether this is a suit in equity or an action at law. Defendant light company demurred to the plaintiff's petition on the grounds of misjoinder of causes of action, misjoinder of parties defendant, and want of equity in the bill. The matters giving ground for equitable cognizance, if they do, as contained in the petition are: that the defendants are joint debtors with plaintiff in the Rose judgment and are liable to ratable contribution under the statute; the plaintiff has no full, complete and adequate remedy at law; and the joinder herein is made in order to avoid a multiplicity of actions.

The plaintiff, respondent here, to sustain the joinder of causes and parties, cites and relies on 1 Corpus Juris, 987, Dysart v. Crowe, 170 Mo. 275, 70 S. W. 689, and Gilchrist v. Smelter Co., 58 Fed. l. c. 710. In the cited text of Corpus Juris it is said: "The rule that there shall be a remedy for the enforcement of every right, although it be a new right created by statute, does not have reference to any one particular remedy, but to such form of remedy as is appropriate to the nature of the particular case; and in some cases there may be more than one appropriate remedy. If the case is of a legal nature the remedy must be at law, in such form as is appropriate to the nature and circumstances of the particular case. But the remedy for a new right created by statute is not necessarily at law, but depends upon the essential character of the particular case, and if the case is essentially of an equitable character the proper remedy is by suit in equity." And the cited cases hold the same in effect. This statute in creating a new right where none had existed before, provides as follows: "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in an action founded on a contract. . . ."

The case of Dysart v. Crowe, 170 Mo. supra, is not in point as it was not brought under the statute. It was a proceeding by certain joint makers of a promissory note, who had paid it in part, against their co-obligors who had not contributed. The suit was for an accounting, for contribution and for general equitable relief. This court said in summation: "We hold that the suit was properly brought in a court of equity, both on the ground that contribution of the kind sought is a subject of equitable cognizance and also on the ground that in this instance it avoids a multitude of suits." But in the present case it appears from respondent's petition that jurisdiction in equity is predicated only upon avoidance of multiplicity of suits and on alleged inadequacy of remedy at law. Such allegations are mere conclusions of the pleader. [Wolf v. Fire Ins. Co., 219 Mo. App. 307, 269 S. W. 701.] The facts alleged invoked

no principles of equity jurisprudence, but only relief the law courts provide. The only reported case in any of our appellate courts brought in equity under said statute, so far as we are advised, is Brewster v. Gauss, 37 Mo. 519. That case, as stated in the opinion therein, involved not only numerous parties but also facts which properly invoke principles of equity jurisprudence. The case at bar, as shown on the face of the petition, was clearly an action at law. [See, also, Hanna v. Hyatt, 67 Mo. App. 308.] The rule applied in this State, and supported by the greater weight of authority, is that equity will not assume jurisdiction of an action at law nor permit the joinder of causes of action, or of defendants, solely to prevent a multiplicity of suits; that equity will not interfere to prevent a multiplicity of suits unless the questions involved are of equitable cognizance; and the mere fact that there is a community of interest in the questions of law and fact present in a controversy will not warrant such interposition. [Ballew Lbr. & Hdw. Co. v. Mo. Pac. Ry. Co., 288 Mo. 473, 232 S, W. 1015, and Wagner v. Eisenmenger (Mo. App.), 65 S. W. (2d) 108.] It follows that there was a misjoinder of actions and of parties. Hence it was error on the part of the trial court to deny the demurrer—which alleged misjoinder of causes and parties and want of equity in the bill. Consequently it was also error to refuse declarations of law tendered by the appellants, if the same were correct and proper.

II. The light company pleaded and introduced in evidence in the trial below the entire record in the indemnity case to show, and now urges on appeal, that no issues were adjudicated in the Rose case among these defendants and that the indemnity judgment constitutes estoppel by verdict on the proposition that the judgment was a final determination of the fact that the Rose judgment was and is not substantial evidence to support indemnity therein or contribution herein. The appellants concede that this suit is on a different claim or demand from that in the indemnity action and that hence the respondent herein is not barred through estoppel by judgment, irrespective of the established rule raised by respondent, of no estoppel by nonsuit. [State ex rel. v. Laundry Co., 196 Mo. App. 627, 190 S. W. 951, and cases cited.] They use the term "estoppel by verdict" in the sense—defined in Black on Judgments, section 504, 34 Corpus Juris, pages 745-6, and applied in the case of Case v. Sipes, 280 Mo. 110, 217 S. W. 306, and other cases cited—"that the estoppel is limited to matters actually or by necessary implication found and determined in the prior action."

The rule is correctly stated, but we are of the opinion it is in this case misapplied by the appellants. The plaintiff in the indemnity case introduced the judgment roll of the Rose case and stood upon it. In the indemnity case we held as did the court below that the

judgment was insufficient to make a prima facie case for indemnity, and we further held the only matters conclusively established in that case were those essential to, and shown to be involved in said judgment; that there was no issue involved of primary and secondary liability of the former codefendants *inter se*—who were then not adversaries,—since a contest involving that matter could not have been raised in that action because it would not have been germane thereto. We held also that that matter was not involved in the indemnity case itself, an action at common law, and by reason of the nature of the remedy in indemnity, the Rose judgment was insufficient to constitute prima facie evidence of a right to indemnity  There can be no doubt of the correctness of that ruling. [6 R. C. L. 1062.] Further, we pointed out that in an action for contribution under the statute a prior judgment rendered against joint tortfeasors *is* sufficient to constitute prima facie evidence in a subsequent action over for contribution; citing Kinloch Tel. Co. v. City of St. Louis, 268 Mo. 485, 188 S. W. 182, and Eaton & Prince Co. v. Trust Co., 123 Mo. App. 117, 100 S. W. 561, in support of that proposition. This distinction arises out of a fundamental dissimilarity between those remedies: Indemnity springs from contract (express or implied). The doctrine of contribution is not founded on contract, but is based on the principle that equality of burden as to a common right is equity, and that wherever there is a common right the burden is also common. [14 R. C. L. 43; 13 C. J. 821-2; Eaton & Prince Co. case, supra.] In an indemnity action full reimbursement is sought and recoverable; is an action for contribution, only ratable or proportional reimbursement. Therefore, the decision in the indemnity case determined no matters of fact or of record that support the defense of estoppel by verdict in this case. Neither can the assertion made for appellants, to the effect that said decision disapproved the Kinloch case, or weakened its authoritative value, find any support whatsoever in said indemnity decision.

Appellants concede that by the introduction of the Rose judgment in evidence that respondent made a prima facie case for contribution and that the burden rested upon the appellants to rebut the same. ''Prima facie evidence. It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose.' '' [Kelly v. Jackson, 6 Peters, 632, quoted in Gilpin v. Ry. Co., 197 Mo. l. c. 325, 94 S. W. 869.] Let us assume until otherwise indicated that the prima facie case was not rebutted. The rule applicable and determinative in the situation, in view of the foregoing considerations is then, as stated in Freeman on Judgments (4 Ed.) section 158, section 425, (5 Ed.),—quoted in McMahan v. Geiger, 73 Mo. l. c. 149, and again in the Kinloch case, supra, l. c. 496-7, in part as follows:

"As between the several defendants therein a joint judgment establishes nothing but their joint liability to the plaintiff. Which of the defendants should pay the entire debt, or what proportion each should pay in case each is partly liable, is still unadjudicated; but a judgment against two joint debtors prevents either from denying the existence and obligation of the debt, though he may still prove by any competent evidence in his power that the whole burden of the obligation should be borne by the other."

III. The appellants have undertaken to so shift the whole burden of the debt upon the respondent upon the asserted ground that the respondent was guilty of primary negligence in the premises and is under consequent primary and sole liability. Appellants' assertion is predicated upon respondent's supposed negligent order given Rose to climb the pole and encounter the rotten, insecurely attached cross-arm, of which dangerous condition respondent was charged to have been actually or constructively aware. This, appellants contend, was active negligence coming within a separate and distinct charge of active negligence arising out of a negligent order. They contend further that apart from negligent order, the charge of failure to furnish and maintain a safe place for work was itself active and primary negligence. These questions require further examination of Rose's petition.

That petition recited that Rose was ordered and directed by his employer to remedy, in the capacity of lineman, an irregularity in the former's wire system; "that *under the duties of his employment and the uniform and long established method and means of doing the work* plaintiff . . . climbed the pole" in question in order to reach his master's wires located near the top of the pole and above said cross-arm. The petition, after charging the master's duty relative to a safe place for work, and the incidental duty to inspect and discover hidden defects and dangers not open to ordinary inspection, charges the negligent violation thereof and the negligent "requirement" made of Rose to climb the pole with knowledge, active or constructive, on the part of the master, of its dangerous condition.

The charges should be considered as a whole—with the context. When that is done it is obvious that the so-called order was not in the legal sense a direct or specific order. The task was in the usual course of the work Rose was employed to do, and was undertaken "under the duties of his employment" as expressly pleaded. The work was, in a sense, done under an order of the master, but such order was merely implied from the relation of master and servant, of which the distinguishing feature is the right to command and the correlative duty to obey; and, as it would seem, constitutes the basis

of the safe place rule. The doctrine of implied order rests upon omission of the master to perform his duty of previous inspection. The record shows that the only semblance of an order was the work-sheet or order-sheet he obtained by going to his employer's office. The sheet he obtained there was in the customary form, specifying the place and nature of the work involved and having a blank space in which the workman might record and report the time spent in the work. He proceeded to the place of work and to the discharge of the work in his own way without let or hindrance and was at no time under the immediate direction or observation of a superior servant of his master. His volition was not controlled or in anywise affected.

It is manifest that the facts shown do not constitute a command, nor was the so-called order a proximate cause of Rose's injury. There was no substantial evidence in the record supporting a direct order. [Note: These facts appear in the printed abstract filed in the Rose case which we may look to, as the issues tendered by the Rose petition relative to negligence of the defendants were not stated in the instructions given the jury. City of St. Joseph v. Union Ry. Co., 116 Mo. l. c. 645, 22 S. W. 794, and cases cited.]

The doctrine of direct or specific order involves and applies to the duty of the master to warn as the particular occasion makes necessary. And a direct order is active and positive in character, and has among its characteristics these: It is given under unusual conditions with respect to time, exigency, place, manner or means of performance, and leaves the servant with no choice or volition of his own in the circumstances; also it necessitates prompt obedience on the part of the servant and imports assurance, by the master, of safety in obeying the order. Foundational to such order is the master's duty to *warn*. We are cited to no particular authority which draws the distinction we have undertaken to show, but we think these observations are properly deducible from the individual cases and textbooks we have examined.

Appellants cite as authorities on this point: Rose v. Missouri Dist. Tele. Co., 328 Mo. 1009, 1026, 43 S. W. (2d) 565-566; Eckles v. Des Moines Casket Co. (Iowa), 130 N. W. 113-114; Village v. Citizens' Tel. (Mich.), 173 N. W. 382; Weatherford Water, Light, etc., Co. v. Veit (Tex.), 196 S. W. 986, 991; Alaska S. S. Co. v. Pac. Coast Gypsum Co. (Wash.), 128 Pac. 654; Carson v. Knight (Tex.), 284 S. W. l. c. 619, the last two of which involve situations quite unlike the one involved in this case.

The decision in the Rose case, supra, lends no support to appellants' contention. Indisputably it ruled the telephone company's liability to Rose on the former's negligent omission to furnish a safe place for work, and, as incidental thereto, to reasonably inspect

for hidden defects or dangers. As regards that company's duty, the decision could not have been placed on a broader base, for the reason that the court's language in respect to that matter was identical with the language in the petition, and for the further reason as shown above, there was no substantial evidence in the case sufficient to establish a direct order.

Eckles v. Des Moines Casket Co., supra, was a case in which the master not only failed to provide a safe place for work, but actually ordered the servant to perform unusual work in an unsafe place.

In Village v. Telephone Co., supra, the village of Portland, which owned a light plant, authorized a telephone company to string wires in the street. The telephone company strung its wires in such a manner that they sagged and came into contact with a high-tension wire of the light plant, eventually wearing the insulation off the latter, and the same broke during a storm and caused injury. The court held, that the village could not recover over from the telephone company because they were joint tortfeasors, guilty of active negligence.

Weatherford Water, Light, etc., Co. v. Veit, supra, is the authority upon which the appellants place their chief reliance. They insist it is exactly in point and rules that failure to furnish a safe place is active and positive negligence. Let us see. The light company maintained its high-tension, uninsulated and dangerous wires in close proximity to a pole of the telephone company in an unusual manner. Veit, an employee of the latter company, being unacquainted with the locality or the conditions surrounding the pole, in obedience to the telephone company's foreman who was present and directing him, climbed said pole, thereby coming into contact with said high-tension wires of the light company and sustaining injury thereby. The court held that the telephone company, with full knowledge of the situation and the danger thereof, was guilty of active and primary negligence in directing Veit to climb the pole without expressly warning him of the location and uninsulated condition of the high-tension wire. It is true that the court, in its opinion (l. c. 990) observed, "He had a right to assume that his master, the telephone company, had provided him with a safe place to work." But the exposition following that observation clearly indicates that the reference was made by way of approach to the essential and positive act involved in the foreman's command, and the court, in effect, applied the direct order rule as a branch or correlative of the safe place rule. So reading that opinion we detect no intention on the part of that court to announce that mere omission (passive) of due care to provide a safe place constitutes active and positive negligence.

We are of the opinion that the distinction between the Veit case as

well as the others associated with it above, and the case at bar may be summed up in the following loose quotation which the writer hereof is not at the moment able to attribute to its proper source: "It was the master's negligence in giving the order, and the fact that the peril was not one usual to the employee's service, which forms the gist of the master's negligence."

It having been developed from the Rose judgment roll, used evidentially in this case, that the negligence of the telegraph company was passive and secondary with respect to Rose, how stands the case as among the three joint tortfeasors? Respondent is not concerned with whether the negligence of appellants was primary or secondary, but only with the nature of its own misfeasance. By bringing this suit the respondent conceded, in legal effect, that the parties herein were *in pari delicto;* i. e., all were with respect to Rose, and were also in equal fault as between respondent on the one side and the appellants on the other; and upon the introduction of the judgment in evidence these relationships were proven prima facie. The entire effort of appellants—and for the most part combined effort—in this case was to show that respondent was primarily and themselves secondarily negligent, if negligent at all. That was the issue tendered by the answers. Respondent's prima facie case was re-inforced (though it might, on the other hand, have been refuted, as was the situation in the Kimloch case, supra), by the intrinsic, probative effect of the facts adjudicated (between Rose and his adversaries) in the Rose case and now operative evidentially in this case. This evidence, so brought into this case, on the issues formed herein, namely: primary negligence *vel non* of the telegraph company, and proximate cause—here closely related to each other—has a potency of its own to establish, as we now invoke it as establishing, as between the respondent and the appellants, the passive and secondary nature of respondent's negligence. So that, it remains to determine next whether the negligent omissions of the respective joint tortfeasors operated together so as to become the efficient cause of Rose's injury. The appellants contend it does not. The solution of this question is dependent upon the relation of the respective companies to the instrumentalities that were involved as the physical cause of Rose's injury.

There was in this case, as also in the Rose case, evidence that a predecessor of the light company in title owned the cross-arm which was installed under permission of the city of St. Louis on the pole and with the consent of the owner of the pole; a report made in writing by said predecessor of the installation of the cross-arm pursuant to said permit and said consent; also of the succession of the light company to all property and rights of the predecessor; and there was evidence to the contrary. There was also evidence that

it was a long-established practice or custom of the employees of the several companies indiscriminately, in the discharge of their various duties to their respective masters, to climb the pole in question, and others, and that it was necessary for them to be about the cross-arm in suit in doing so,—of all of which the companies at all times had knowledge, actual or constructive; and evidence that each of the companies had in its employ inspectors whose duty it was to inspect said cross-arm and who did inspect at times. The above facts are also discussed in the opinion rendered in the Rose case, supra. Thus, in the discharge of his duties to the telegraph company, Rose became and was a licensee by implied permission of the light company, as he was also a contractual licensee of the telephone company. He was such licensee by virtue of representing his master, and each of these three companies in common owed him the duty of ordinary care to reasonably inspect and discover the dangerous condition of the cross-arm and to abate the hidden peril it formed. Their failure to do so was omission on the part of each of the companies, which constituted passive or inactive negligence *inter se,* coincident, concurrent and contributing equally and alike to constitute one composite proximate cause of the injury. In 22 Ruling Case Law, page 130, it is said:

"Where two causes, each attributable to the negligence of a responsible person, concur in producing an injury to another, either of which causes would produce it regardless of the other, it is reasonable to say that there is a joint and several liability, because . . . each wrongdoer, in effect, adopts the conduct of his co-actor, and for the further reason that it is impossible to apportion the damage or to say that they perpetrated any distinct injury that can be separated from the whole. . . ."

In Eaton & Prince Co. v. Trust Co., supra, it was held, in effect, that the statute was intended to cover a case of negligent or passive omission of duty on the part of the several joint tortfeasors which concurred in causing the damage for which judgment was rendered, though there was no unity or concert of action on their part, as such rule had been previously pronounced by this court in Brewster v. Gauss, 37 Mo. 518, an action for contribution brought under the statute as enacted.

The conclusion is irresistible that respondent is entitled to contribution as against each appellant, unless obstacles in addition to those already proposed and considered may prevent.

IV. The telephone company pleaded in bar herein that the telegraph company was maintaining its plant facilities under a lease from the former company containing a provision by which the telegraph company as lessee undertook to indemnify lessor against damages resulting to property used by lessor, and "from and against any

and all . . . claims, suits, *judgments for damages or injuries arising to persons or property or in any manner by reason of the use or maintenance by the lessee of plant facilities hereunder,* or by reason of the acts or negligence of the agents, or employees of lessee while engaged in the work of placing, maintaining, renewing or removing plant facilities hereunder.'' (Italics ours.)

In connection with the introduction of the lease in evidence it was admitted that there had been a custom and practice established pursuant to requirement of a city ordinance of the city of St. Louis, where the accident occurred, by which a company owning poles granted to other wire-using companies the right to use any available space thereon.

For the telephone company it is contended that the indemnity clause ought to be construed according to ordinary meaning of the language in which it is expressed, and that when it is so construed it imposes on the telegraph company the obligation to save the telephone company harmless from loss in this instance because it *"arose from damages or injuries arising by reason of the use and maintenance by the lessee of plant facilities hereunder."* These are the authorities this appellant relies upon: St. Louis & Suburban Ry. Co. v. Stewart, 187 S. W. 836; Heman Const. Co. v. City of St. Louis, 256 Mo. 332, 165 S. W. 1032; Kinloch Tel. Co. v. City of St. Louis, supra.

The first cited case was an action over brought by plaintiff railway company against its general contractor and the latter's subcontractor for indemnity for payment of judgment obtained against plaintiff by one Clark for injuries. Clark was an employee of the subcontractor. Clark's case was based on the failure of plaintiff to furnish him a safe place to perform the work of his employer, the subcontractor. Plaintiff based the action over on a contract between plaintiff and said contractor whereby the contractor assumed ''all risks of accidents to materials, workmen or persons engaged in or about the buildings . . . caused by him or his employees during the construction of the building.'' As against the contention that the contract was not intended to indemnify against plaintiff's own negligence the court denied the contention, placing the denial on the ground that plaintiff ''had *no voice* in the premises . . . while, on the other hand, the defendants had full charge and control of the buildings and the employees.'' (Italics ours.)

The next, or Heman Construction Company case, was an action over by the defendants for contribution for one-half of a previous judgment (paid by it) rendered against it and the city for joint tort committed by them against property adjacent to an excavation made in constructing a sewer pursuant to a contract between the company and the city. By the contract the company agreed to in-

demnify the city against suits for injury or damage sustained by any persons by reason of the acts or in consequence of any negligence of the contractor. The city and the contractor omitted to give advance notice to the property owner of the danger to which the work would subject her property. The court held, in effect, that the primary duty to give notice rested on the company under the contract of indemnity, and denied contribution. The Kinloch case, in respect of indemnity contract, is similar to the Heman Construction Company case.

We are unable to perceive that the foregoing authorities have any special pertinence to the indemnity contract in this case. They apply to subject matter entirely different from that contemplated in this contract. Each of the other contracts relates to one specific project. There was in none of them any commingling of property to be used in common and in none a peculiar relationship such as that which existed between the co-users of the pole in this case. And, too, the element of "voice and control" which was the reason of decision in the first case noted above, is present here in respect of plant facilities, for the lease confers on the lessor the right to compel the lessee, on thirty days' notice in writing and at its expense, to change, alter, improve or renew its property as lessor may direct, failure to comply rendering the lease immediately terminable on notice from lessor, and prohibits the lessee from changing the use of plant facilities without the consent in writing of the lessor. It would seem that such power to prevent loss or damage may have had some influence on the intended scope of the indemnity contract, since the exercise of the power would of itself be a safeguard to some extent.

Respondent points out that by the last clause of the indemnity provision the telephone company reinforced a duty which the law imposed on the respondent regardless of the lease, thereby making this obligation paramount; and next points out that the language used in the clause (italicized) next preceding that one does not say plainly or otherwise that respondent shall indemnify the telephone company for the consequences of its own wrongs. We think the language is correctly characterized in this contention; the language is very broad and indefinite. We are cited by the respondent to Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 543; Stebbins v. Selig, 257 Fed. 230, 234; North American Ry. Const. Co. v. Cincinnati Traction Co., 172 Fed. 214, 216; National Surety Co. v. Roth, 208 Mo. App. 277, 283, 232 S. W. 737; Marshall v. Ry. Co. (Del.), 112 Atl. 526; Southern Bell Tel. Co. v. Mayor, etc., 74 Fed. (2d) 983; Perry v. Payne, 217 Pa. St. 252, 66 Atl. 553.

Space will not permit of more than brief reference to the cited cases and it must suffice to point out their common and ultimate

grounds of decision, which are, in substance, that where such contracts are phrased in general terms, as here, they are held not to indemnify in instances where negligence of the indemnitee is the primary or a contributing cause of the loss or damages, particularly where the physical conditions were not under the control of the indemnitor.

It is stated (and supported by a mass of authorities) in Telephone Co. v. Mayor, etc., supra. "It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms."

In North Am. Ry. Const. Co. v. Cincinnati Traction Co., supra, l. c. 216, it is said: "Contracts of indemnity such as the one here sued upon, are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other, over which the party indemnified has no control, and the party indemnifying has control. Indeed, it would take clear language to show that a contract of indemnity was intended to cover conditions or operations under the control of the party indemnified, and not under the control of the indemnifying party, such, for instance, as accidents, the proximate cause of which is the negligence of the party indemnified. . . ." [See, also, 10 Am. & Eng. Ann. Cas. 593.]

In the light of these rules of interpretation and of the conditions, and the legal relationship of the parties, that existed in this case we rule that the indemnity contract constitutes no bar to respondent's recovery herein.

Our ruling above necessarily determines adversely to this appellant the counterclaim it set up for the recovery of its outlay in defending the Rose case.

V. The light company, as has already been indicated, set up by way of defense, the indemnity judgment as a bar, and the further defense that the respondent was guilty of primary negligence in the premises of Rose's injury. In the trial of this case this appellant introduced in evidence the judgment roll in the indemnity case and Rose's testimony given in the Rose case. He was permitted to introduce also oral and documentary evidence, over the objection of respondent, of the same general nature as that introduced by this appellant in its defense made in the Rose case. The additional evidence so received in the case at bar was cumulative of the other, and the whole related to the cross-arm and had a tendency to rebut this appellant's ownership or control thereof and its negligence and liability with respect to Rose. The trial court received and considered it for whatever matter it might contain pertinent to the issue of respondent's primary negligence. We also have considered it. We

find, as did the trial court, against the light company upon the issue as to its ownership and control of the cross-arm and as to its negligence and liability as charged with respect thereto; and we so find upon the issue as to alleged primary negligence of the telegraph company. Accordingly, we hold that the light company as well as the telephone company is liable to respondent for contribution herein.

VI. There remain for consideration some minor questions. The fact that the parties herein by solemn agreement waived a jury and agreed to try the case to the court is largely determinative of them, since no question arises on this record of any denial of the constitutional right to try an action at law before a jury. In the beginning we held that there was error in misjoinder and in refusal of instructions. We now observe that the trial court at the time of entering the judgment filed a written memorandum in which he stated the issues in the case, the ultimate facts, and his conclusions of law thereon. In an analogous situation our court has ruled that the failure to give declarations of law is of no importance, for declarations, if given, would simply indicate the theory of the court. [Graham v. Graham, 297 Mo. 290, 299, 249 S. W. 37.] It is manifest that the misjoinder referred to worked no injury to the appellants. Neither did hearing the case as though it were one in equity. The proceeding has taken precisely the same course, under the agreement stated, as though it had been tried below as an action at law; save as to giving of declarations of law, which we have held to be inconsequential in the circumstances, and as to separate trials. The parties have had their day in court and a full and laborious consideration of the cause. It is perfectly clear, therefore, that the errors referred to were not material. In such situation our statute (Sec. 1062, R. S. 1929) applies, which provides that our appellate courts shall not reverse the judgment of any court, unless for errors materially affecting the merits of the action.

The question is raised whether interest on respondent's outlay is recoverable. We hold that the respondent is entitled to interest upon its outlay from the date of the satisfaction of the Rose judgment.

The judgment of the circuit court is affirmed.

*Ellison, C. J., Tipton* and *Collet, JJ.,* concur; *Gantt, J.,* concurs in result in separate opinion in which *Frank* and *Leedy, JJ.,* concur.

### CONCURRING OPINION.

GANTT, J.—I do not concur in paragraph one of the principal opinion. It rules that the petition did not allege facts sufficient to give jurisdiction in equity, and that there was a misjoinder of actions and parties. The ruling is on the theory that contribution be-

tween joint tortfeasors is a right created by statute, which statute does not authorize a suit in equity but only authorizes an action at law. Is this a proper construction? The statute first appeared in Revised Statutes 1855, page 649, and provides as follows:

"Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, *in the same manner and to the same extent as defendants in a judgment in an action founded on contract.*" [Sec. 3268, R. S. 1929.]

At common law it is the general rule that there is no contribution between joint tortfeasors. Under said law it is against public policy to adjust equities between wrongdoers. The court leaves them in the position where it finds them. [13 C. J. 828-830, secs. 18-21; 6 R. C. L. 1054, sec. 17; 5 Pomeroy's Equity, 5173, sec. 2339; Flenner v. Southwest Missouri Railroad Co., 290 S. W. 98; Kilroy v. St. Louis, 242 Mo. 79, 145 S. W. 769.]

It should be noted that the statute neither makes provision concerning the form of the action nor provides whether the right granted may be enforced at law or in equity. It does provide that joint tortfeasors against whom a judgment has been rendered "shall be subject to contribution . . . *in the same manner and to the same extent as defendants in a judgment founded on contract.*" This means that to find the remedy available to enforce contribution among joint tortfeasors, we must find what remedy there was for contribution between defendants in a judgment based on contract. It means that tortfeasors have exactly the same remedies to enforce contribution as in cases of contribution based on contract. The statute is not susceptible of any other interpretation.

Contribution originated in equity, was enforceable only in equity and was based upon the equitable principle that "equality is equity." It was the rule that as between parties under an equal obligation one of them should not be obliged to bear a common burden and thus allow the others to escape said burden. [13 C. J. 821, sec. 2, p. 832, sec. 26; 6 R. C. L. 1059, sec. 19; 5 Pomeroy's Equity, 5169, sec. 2338; 1 Pomeroy's Equity, 763, secs. 406-07; 2 Story's Equity, 26-82, secs. 666-670.]

Finally the courts recognized this equitable obligation between parties as ground for holding that there was an implied contract between them to pay their share and ruled that the right of contribution might be enforced by the action of *assumpsit.* [13 C. J. 832, sec. 26; 6 R. C. L. 1059, sec. 19; 2 Story's Equity 81, sec. 670.]

A legal action is a separate suit against each of those liable for an aliquot part of the loss. [5 Pomeroy's Equity, 5170, sec. 2338.] Being a suit on an implied promise to pay a definite share, the legal action was a separate action against each party liable and several

parties liable to contribution for the same judgment could not be joined as defendants in an action at law. [6 R. C. L. 1061, sec. 21; 13 C. J. 834, sec. 30.] Statutory remedies to enforce contribution by motion in the original case instead of by a separate suit have been provided in case of sureties. [Secs. 2941-2942, R. S. 1929.] However, the fact that there are remedies recognized at law or provided by statute does not oust the jurisdiction of equity or prevent one entitled to contribution from enforcing his right by an action in equity in which he may join as defendants all parties claimed to be liable. Furthermore, it would seem that whenever more than one person may be liable (that is, where a judgment has been rendered against more than two defendants) the equitable remedy is superior to that at law. [13 C. J. 833, sec. 26, p. 834, sec. 30; 6 R. C. L.; p. 1059, sec. 19, p. 1061, sec. 21; 5 Pomeroy's Equity, 5170, sec. 2338; 5 Pomeroy's Equity, 3362, sec. 1418, and note; 1 Pomeroy's Equity, 517, sec. 278; 2 Story's Equity, 84, sec. 673; Dysart v. Crow, 170 Mo. 275, 70 S. W. 689.]

The statement of Story, in the section above cited, follows:

"But still the jurisdiction now assumed in Courts of Law upon this subject in no manner affects that originally and intrinsically belonging to equity. Indeed there are many cases in which the relief is more complete and effectual in equity than it can be at law; as for instance where an account and discovery are wanted, or where there are numerous parties in interest which would occasion a multiplicity of suits. In some cases the remedy at law is now utterly inadequate. As if there are several sureties and one is insolvent and another pays the debt, he can at law recover from the other solvent sureties only the same share as he could if all were solvent. Thus if there are four sureties and one is insolvent, a solvent surety who pays the whole debt can recover only one-fourth part thereof (and not a third part) against the other two solvent sureties. But in a Court of Equity he will be entitled to recover one-third of the debt against each of them; for in equity the insolvent's share is apportioned among all the other solvent sureties."

There is no reason why these principles do not apply between joint tortfeasors to enforce contribution given by statute. Of course, where the judgment is against only two defendants, an action at law in the nature of *assumpsit* is a full, complete and adequate remedy, because if there is liability, it is for half the amount of the judgment paid by the codefendant. However, in a case where contribution is sought from more than one party, the remedy at law may not be full, complete and adequate. In such cases it will avoid a multiplicity of suits, and while that alone is not a ground for equitable jurisdiction, the fact that the remedy at law is not a full, complete and adequate remedy always is a ground for such jurisdiction.

This court, in one of the early actions under our statute, recognized the propriety of an action in equity by one tortfeasor against several others, against whom judgment had been jointly remedied. [Brewster v. Gauss, 37 Mo. 518.] Moreover, as stated in Dysart v. Crow, supra, whenever an action in equity has been recognized as a proper remedy to enforce a certain right, other methods of enforcing the same right at law or under statute are only concurrent remedies, and it would be "difficult to maintain that a court of law by its own act could oust or repeal a jurisdiction already rightfully attached in equity." The same would be true of a statute which does not specifically prohibit or exclude equitable jurisdiction but gives to a new class the rights (which would certainly include the remedies) already recognized as belonging to another class. Indeed, if the original jurisdiction to enforce contribution was in equity, should it be necessary to state any other ground for jurisdiction than merely to state facts showing the right to contribution against more than one other person? In other words, unless the pleadings clearly show no situation requiring equitable relief, is not an action for contribution always an equitable action? I think so because originally it could not be anything else.

Of course, the nature of the action may be determined from all the pleadings. In the instant case it is not merely alleged that plaintiff has no adequate remedy at law. On the contrary, the petition set forth the petition and answers in the original case; alleged that judgment was entered jointly against plaintiff and defendants herein, and that plaintiff paid the judgment. It then prayed for judgment against each of the defendants herein for one-third of the amount paid in satisfaction of the judgment.

One of the defendants herein alleged that it was not liable for contribution under the provisions of a lease which it claimed required indemnity of plaintiff, and further alleged that plaintiff was liable for said defendant's expenses in defending the original suit.

The other defendant alleged that it was not liable for contribution for the reason that plaintiff was primarily liable for the injury which was the foundation of the original suit. I think the facts alleged invoke principles of equity; that separate causes of action would not afford plaintiff a full, complete and adequate remedy, and that it was entitled to have these issues determined in one action.

For these reasons I concur in the result. *Frank* and *Leedy, JJ.,* concur.